IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 7230 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381a, 1382c, six and a half years ago, on August 31, 2015. (Administrative Record (R.) 190-202). He claimed that he became disabled as of February 18, 2015, due to a back impairment and back surgery, radiculopathy, diabetes, high blood pressure, high cholesterol, and depression. (R. 173-87, 243). Over the ensuing three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981.

This case has had something of a difficult time with scheduling and completion. Plaintiff filed suit under 42 U.S.C. § 405(g) four and a half years ago. His case was assigned to a District Judge and was fully briefed as of August 12, 2019. [Dkt. #23]. Thereafter, the Executive Committee randomly reassigned the case to newly appointed District Judge along with 341 other cases on

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

September 16, 2019. The parties were back to square one. [Dkt. #24]. Then on May 12, 2021, the parties consented jurisdiction here pursuant to 28 U.S.C. § 636(c). [Dkt. ##41, 43]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

I.

A.

The facts are not in dispute. The plaintiff was born on March 1, 1963 (R. 173), and was 54 years old at the time of the ALJ's decision. (R. 42-53). The plaintiff had a high-school-level education in Mexico, and can understand some simple spoken and written English. (R. 63). The plaintiff has a very good work record, working consistently from 1988 through 2008, and again from 2011 through 2015. (R. 194). He worked mostly as a machine operator – packing food items – and in general labor – golf course maintenance. (R. 202). Both jobs required him to be on his feet all day and do a lot of lifting and carrying of heavy items. (R. 203-05). He had to quit working in 2015 when he injured his back and had to have surgery. (R. 64).

Plaintiff had that surgery on May 7, 2015, a lumbar fusion with sacroiliac screws. (R. 319, 321, 346). On May 10, 2015, just a couple of days later, plaintiff reported that he had "zero" pain. Neurological exam was normal, gait and station were normal, there was normal spinal curvature, no tenderness, full range of motion, and extremity strength was only slightly diminished. (R. 314). On June 17, 2015, things were much the same. Neurological exam was normal, gait and station were normal, normal spinal curvature, no tenderness, full range of motion, extremity strength only slightly diminished. (R. 311). Plaintiff's doctor recommended he continue using a lumbar brace for another six weeks. (R. 312). On June 29, 2015, plaintiff reported increased gluteal and hip pain. He could

not perform prolonged standing, lifting, or bending. (R. 368).

On July 27, 2015, plaintiff reported he was still having some pain and numbness. Strength was reduced to 4/5 throughout. There was tenderness to palpation in the lumbar region. Gait was normal, plaintiff was still wearing his brace, and reported he could walk 30 minutes without pain. (R. 349-50). On July 29, 2015, plaintiff had completed physical therapy and felt significantly improved except for left buttock pain, especially getting in and out of a car. Neurological exam was normal, gait and station were normal, spinal curvature was normal, there was no tenderness, full range of motion, and extremity strength only slightly diminished. (R. 308). X-ray showed solid fusion with excellent positioning of surgical instrumentation. (R. 309).

On August 12, 2015, plaintiff reported dull aching pain radiating through his left leg and numbness in both feet. He wasn't doing his home exercises. Plaintiff's gait was guarded and pelvic rotation was decreased. Plaintiff was given paraspinal injections. ( R. 359). On August 28, 2015, plaintiff reported his back was doing better – about 70% improved. He still had some soreness and occasional buttocks pain, as well as numbness in his feet. Range of motion was limited to 55/90 flexion, 20 extension. (R. 346). Gait was normal, plaintiff was still wearing his brace, and reported he could walk 30 minutes without pain. He had made good progress with physical therapy. (R. 347).

By September 14, 2015, plaintiff was complaining of left buttocks pain and some leg numbness, Neurological exam was still normal, as were gait and station normal and spinal curvature And, again, there was no tenderness, full range of motion, and extremity strength as only slightly diminished. (R. 394). Two weeks later, plaintiff's back symptoms were better, but he had left lumbar spine pain, sacroiliac soreness, and he was limping. (R. 397).

On October 26, 2015, plaintiff had a consultative examination with Dr. Karri in connection with his application for benefits. The doctor noted that plaintiff was morbidly obese. (R. 385). There was pitting edema in his extremities. His gait was guarded, and he could not tandem gait or heel-toe walk. Range of motion in the lumbar spine was significantly limited: flexion was 50 degrees and extension was zero degrees. Straight leg raising was positive bilaterally and there was tenderness in the lumbar spine and sacroiliac joints. Strength was slightly diminished in both legs, and sensation was decreased. (R. 386).

X-ray on October 26, 2015, surgical screws at L5, S1, and bilateral sacroiliac screws. Lordosis was normal but there was trace anterolisthesis of L5 on S1. (R. 388). On November 16, 2015, plaintiff reported numbness in his legs from walking, pain on the left side, and said that physical therapy was no longer helping. Neurological exam was normal, gait and station were normal, spinal curvature was normal, there was no tenderness, there was full range of motion, and extremity strength was normal. (R. 391).

On December 22, 2015, an MRI, revealed post-surgical changes, along with persistent, moderate spondylolisthesis at L5-S1, slight levoscoilotic deformity, mild disc bulge and central disc protrusion at L4-5, but no significant stenosis. (R. 409).

On March 7, 2016, plaintiff sought treatment for low back pain radiating down both legs to his feet. Physical therapy – for three months – hadn't helped. The pain was worse with activity. (R. 424). Reflexes were diminished to 2+/4, lumbar flexion and extension were normal, but there was tenderness of the lower lumbar facet. (R. 424-25).

On March 28, 2016, plaintiff sought treatment for constant back pain radiating down his leg, with numbness and tingling in his feet. (R. 419). Reflexes were diminished to 2+/4, lumbar flexion

and extension were normal, but there was tenderness of the lower lumbar facet. (R. 419). Gait was antalgic and straight leg raising was positive bilaterally. (R. 420). MRI revealed multi-level spondylosis with mild spinal stenosis. (R. 420).

On March 15, 2016, plaintiff underwent a medial branch block at four levels of the lumbar spine. (R. 422). He had another on April 5, 2016 (R. 417). Relief lasted just a couple of days. (R. 415, 419). Plaintiff's pain continued through April 18, 2016, and exam results were essentially unchanged. (R. 415).

**B.**

After an administrative hearing – at which plaintiff, represented by counsel, testified through an interpeter, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had the following severe impairments: degenerative disease of the lumbar spine, diabetes mellitus, and obesity. (R. 45). The ALJ went on to find that plaintiff's psychological impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings. (R. 46-47).

The ALJ then determined that the plaintiff had the residual functional capacity to perform light work with the following additional restrictions: he could frequently climb stairs and ramps, but never climb ladders, ropes, or scaffolds; he could occasionally stoop, kneel, crouch, and crawl; he could occasionally be exposed to hazards; he required a sit-stand option whereby he had to be allowed to sit for five minutes after one hour of standing and stand for five minutes after one hour of sitting. (R. 47). The ALJ noted that the plaintiff alleged that his pain prevented him from walking more than two blocks, sitting longer than two hours, standing longer than thirty minutes, or carrying more than thirty pounds. The ALJ then stated that the plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 48).

The ALJ then discussed the medical evidence. The ALJ noted that plaintiff had suffered spondylosis and spondylolistesis at L5-S1 resulting in lower back pain that radiated to his legs. The ALJ noted that he underwent a "minimally invasive decompression and fusion" at L5-S1 with sacroiliac screw implantation, healed and progressed as expected and, thereafter required only conservative treatment: physical therapy, epidural injections, and medication. (R. 48). The ALJ found treatment records to be "scant", "sparse", and medical treatment thereafter "infrequent[]." (R. 48). The ALJ also noted that studies post-surgery showed "only mild disc bulging and joint space narrowing." (R. 48). The ALJ added that plaintiff's diabetes was controlled with diet and medication and that plaintiff's diabetes and obesity were treated conservatively with no indication of a need for more serious action. (R. 48-49). The ALJ also noted that reports indicated that plaintiff had normal or only slightly diminished strength, coordination, range of motion, and reflexes. (R. 49). The ALJ then gave partial weight to the opinions of the state agency reviewers and little weight to the statement from plaintiff's daughter. (R. 50).

Next, the ALJ determined that plaintiff could not return to her past work because it was medium to heavy in terms of exertion, according to the vocational expert. (R. 51). Based on the testimony of the vocational expert, the ALJ then found that plaintiff could perform other jobs that existed in significant numbers in the national economy: cleaner/polisher, DOT#709.687-010, 23,800 jobs; marker II, DOT#920.687-126, 21,800 jobs; small parts assembler I, DOT#706.684-022, 14.500

jobs. (R. 53). Accordingly, the ALJ concluded that plaintiff was not disabled and not entitled to benefits under the Act. (R. 53).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

But, in the Seventh Circuit, the ALJ also has had for many years an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010). The court has said it must be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build what *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) called the "logical

bridge" between the endeavor and the result: "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."[2] *See also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3] But no matter what one's view of the "logical bridge"

---

[2] The "logical bridge" requirement made its first appearance in Social Security cases in Judge Posner's opinion in *Sarchet*. However, its phrasing traces its lineage to Judge Spottswood Robinson's opinion in the non-Social Security case of *Thompson v. Clifford*, 408 F.2d 154 (D.C.Cir. 1968), where Judge Robinson said: "'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." 408 F.2d at 167.

[3] Prior to *Sarchet's* "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that the ALJ had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted," but only "a minimal level of articulation of the ALJ's assessment of the evidence ... in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985),
(continued...)

requirement, no one suggests that the "accurate and logical bridge" must be the doctrinal equivalent of the Pont Neuf. *See also Brumbaugh v. Saul*, 850 Fed.Appx. 973, 977 (7th Cir. 2021)("the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial evidence standard.").

### III.

### A.

The plaintiff argues that the ALJ made two reversible errors: the ALJ improperly discounted the plaintiff's subjective symptoms; and the ALJ failed to account for the limiting effects of plaintiff's lumbar radiculopathy.

The court must defer to an ALJ's evaluation of a plaintiff's subjective complaints unless it is "patently wrong." *Wilder v. Kijakazi*, – F.4th – , –, 2022 WL 34780, at *7 (7th Cir. 2022). *See*

---

[3](...continued)
the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintiff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do.... This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

766 F.2d at 287 (citations omitted).

9

*also Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The question is whether the ALJ gives specific reasons for her evaluation that are supported by the record. *Deborah M.*, 994 F.3d at 789; *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). Here, the ALJ based her assessment on the medical findings, "scant" or "sparse" treatment following surgery, and plaintiff's activities. All of these are appropriate considerations, *Deborah M.*, 994 F.3d at 789–90; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); 20 C.F.R. §§ 404.1529(c)(2),(3); 416.929(c)(2),(3), and the ALJ's findings regarding them are adequately supported by the record.

As for the objective medical evidence, the ALJ noted that diagnostic studies revealed "only mild disc bulging and joint space narrowing. (R. 48; *see* R. 409 (December 22, 2015 MRI showing post-surgical changes and moderate spondylolisthesis at L5-S1, slight levoscoilotic deformity, mild disc bulge and central disc protrusion at L4-5, but no significant stenosis)). *Cf. Gedatus v. Saul*, 994 F.3d 893, 902 (7th Cir. 2021)("So even if there is some evidence that the . . . MRI was not normal in the relevant respects, there is also substantial evidence that it was, and, in any event, substantial evidence that any abnormalities the 2013 MRI might have shown did not disable [plaintiff] for social security purposes. And that is all we require to affirm."). The ALJ also pointed to the fact that examinations findings were, repeatedly unremarkable: only slightly diminished strength, mostly normal gait, and mostly full range of motion. (R. 49). While it is true that the severity of pain cannot be demonstrated by objective medical evidence, what the ALJ did here is consistent with the legal requirements. *Vrooman v. Kijakazi*, 2021 WL 3086196, at *2 (7th Cir. 2021); *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). It was entirely proper for the ALJ to base her assessment on the findings she referenced. *See, e.g., Vrooman*, 2021 WL 3086196, at *2 (ALJ

supported assessment with reference to generally stable medical findings); *Maddox v. Saul*, 858 F. App'x 935, 938 (7th Cir. 2021)(ALJ properly relied on medical findings of no muscle weakness or joint stiffness, normal gait, and no swelling or atrophy); *Deborah M.*, 994 F.3d at 789 (ALJ properly relied on findings demonstrating normal gait and muscle strength and essentially normal neurological findings); *Deloney v. Saul*, 840 F. App'x 1, 4 (7th Cir. 2020)(ALJ's explanation for why plaintiff's impairments were not as debilitating as alleged was adequate where ALJ cited the fact that physical examinations consistently showed good stability, a normal gait, and no need for an assistive device).

In addition to the objective medical evidence, the ALJ also pointed to the "scant" or "sparse" record of treatment following plaintiff's surgery. Again, the course of a plaintiff's treatment is an entirely valid consideration. 20 C.F.R. §§ 404.1529(c)(3)(v); 416.929(c)(3)(v), *Deborah M.*, 994 F.3d at 789; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). As the ALJ noted, treatment was "conservative . . . , consisting of physical therapy, epidural injections . . . , and prescription or over-the-counter analgesics." (R. 48); *see, e.g, Deborah M.*, 994 F.3d at 789 (affirming ALJ's assessment where the record showed "little in the way of actual treatment"); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)(affirming an adverse credibility finding based on the claimant's "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session."); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (characterizing epidural injections as conservative treatment).

The ALJ also noted that treatment records were "scant", and the "sparse medical records reveal that plaintiff infrequently sought medical care after the recovery period following his lumbar spine procedure. . . ." (R. 48). Plaintiff takes issue with this characterization, but it must be taken

11

in context. The medical record in this case is just 120 pages long. That makes it about one-tenth the size, or even less, of the records ALJs – and this court – commonly see. Yes, the plaintiff's treatment began with surgery, but thereafter treatment was conservative, and plaintiff did neglect home exercise and physical therapy from time to time. And, after mid-2016, plaintiff had no more epidurals or any treatment beyond medications. Plaintiff seems to claim that insurance issues prevented further treatment [Dkt. #23, at 2], but the evidence shows that dry needling treatments – which were therapeutic – were delayed slightly, twice, in July and August of 2015 while plaintiff got insurance approval. (R. 359, 398).

Finally, the ALJ considered the plaintiff's daily activities. When evaluating the intensity and persistence of a claimant's symptoms, an ALJ should consider the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). *Prill v. Kijakazi*, – F.4th–, –, 2022 WL 121143 (7th Cir. 2022) The plaintiff's argument against the ALJ doing so here is based on a misreading of the decision. The plaintiff complains that "it is unclear which of [plaintiff's] limited activities the ALJ found so probative of [his] ability to work a full-time, competitive job at the light exertional level." [Dkt. #14, at 9]. But the ALJ did not find plaintiff's activities were probative of a capacity for light work. "She did not equate Plaintiff's activities to full-time work." *Deborah M.*, 994 F.3d 791. She found that plaintiff's activities – being able to attend to his personal tasks, leave his home unassisted to shop for groceries, do light household chores, as well as drive independently, albeit with some physical difficulty– failed to show he had debilitating symptoms. (R. 51).

To be sure, the ALJ did not rehash every detail and every limitation of plaintiff's home life. But she did not have to. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). "[T]he ALJ correctly looked at Plaintiff's daily activities to see if they corroborated h[is] pain claims, and she found that

12

they did not." *Deborah M.*, 994 F.3d at 791. Any failure to "mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so "patently wrong" as to warrant reversal. *Id.*

**B.**

Finally, the plaintiff contends that the ALJ's RFC finding was incomplete because she failed to account for the additional limiting effect of his lumbar radiculopathy. In support of this argument, plaintiff relies on a number of points in the medical record where he complained about numbness in his feet. [Dkt. #14, at 12]. But, the evidence the plaintiff points to fails to show that plaintiff is unable to work. In the main, the findings are mild or unremarkable:

> May 20, 2015: "feeling better but a little numbness in legs . . . surgery has helped with back pain . . ." (R. 328).
>
> May 22, 2015: ". . . feeling much better after surgery . . . [but] stabbing with numbness in both anterior and lateral thigh and knees . . . pretty much constant . . . (R. 352).
>
> May 27, 2015: "Current average pain 4/10. Functional limitations include prolonged standing, lifting carrying." (R. 379).
>
> June 17, 2015: "doing okay; pain 0/10 . . . some tingling to outer left leg, left foot, outer right leg" (R. 327).
>
> August 12, 2015: ". . . constant numbness in the dorsum of feet bilaterally, dull, aching pain in the left buttocks and left lower extremity . . . average pain 6/10." (R. 359).
>
> August 28, 2015: ". . . lower back doing better . . . 70% improvement . . . Bilateral feet numbness has improved but still persistent; Pt. Rates his pain as 3 or 4/10 with activities . . . ." (R.346) ". . . . ambulates without any assistive device with non-antalgic gait pattern, still wearing brace w/longer distances . . . able to walk 30 min w/out pain. . . . .Balance: good." (R. 347).
>
> August 28, 2015: ". . . lower back pain doing better with no lower extremity pain and decreased bilateral feet numbness . . . ." (R. 356).
>
> November 16, 2015: ". . . states he still has numbness into his bilateral legs when walking for a long period of time . . . [but] Sensation intact bilaterally, Lower

13

    extremities . . . Normal gait . . . Flexion/Extension full . . . Bilateral extremity strength . . . 5/5." (R. 391).

    March 7, 2016: ". . . numbness and tingling in both legs down into his feet which is constant . . . [but] sensation intact, reflexes intact . . . (R. 424) . . . Lumbar flexion/extension within normal limits . . . straight leg raising . . . positive . . . Strength 5/5 . . . ."(R. 425).

So, over and over, exam findings are normal, range of motion is full, gait is normal, pain is mild, etc. Does plaintiff complain of numbness in his feet? Yes. But the RFC is the most a person can do in a work setting despite the person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1527(d)(2); *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020). Numbness in one's feet doesn't necessarily preclude all work, especially when the medical evidence shows good balance, normal gait, normal sensation, and normal or only slightly diminished strength. "A claimant's assertions of pain, taken alone, are not conclusive of a disability." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020).

## C.

    In the end, this case is about varying interpretations of the medical evidence. The medical evidence shows that plaintiff improved after surgery, but, of course, the question is whether he improved enough to work. There is a lot of evidence in the way of normal exams and mild or minimal findings that show he did. Is there evidence to the contrary? Of course, there almost always is. But it was up to the ALJ to weigh the evidence and resolve any conflicts. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971)(it is up to the ALJ, not the reviewing court to resolve conflicts in the evidence); *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019)(the court is not to "reweigh the evidence or substitute [our] judgment for that of the ALJ."); *Vrooman*, 2021 WL 3086196, at *2 ("Although some evidence corroborated Vrooman's testimony, he has not shown that the ALJ was obligated to accept it as conclusive."). The plaintiff has not shown that the ALJ's

14

reliance on the objective medical records, treatment, and daily activities was wrong. "Even if reasonable minds could differ on the weight to give the conflicting records, we will not substitute the ALJ's judgment with our own." *Zoch*, 981 F.3d at 602.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment [Dkt. #13] is denied, the defendant's motion for summary judgment [Dkt. #21] is granted, and the ALJ's decision is affirmed.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/25/22